**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| DAMARCUS FIGGS individually and on behalf of all others similarly situated, and DAVID CORBIN individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 1:18-cv-00089-TWP-MPB |
| GEO GROUP, INC., | ) ) ) | |
| Defendant. | ) | |

<u>**ENTRY ON DEFENDANT'S MOTION TO DISMISS**</u>

This matter is before the Court on Defendant GEO Group, Inc.'s ("GEO") Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ([Filing No. 5](#)). On December 13, 2017, Plaintiffs and proposed class representatives Damarcus Figgs ("Figgs") and David Corbin ("Corbin") filed a class action complaint in the Henry County Circuit Court asserting claims against GEO for labor trafficking, discrimination, cruel and unusual punishment, false imprisonment, confinement, unjust enrichment, and negligence. On January 11, 2018, GEO removed the action to this Court. ([Filing No. 1](#).) GEO filed the instant motion to dismiss, arguing Figgs, Corbin, and the proposed class fail to state a claim on which relief can be granted. For the following reasons, GEO's Motion to Dismiss is **granted in part and denied in part**.

## I.  <u>BACKGROUND</u>

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all

inferences in favor of Figgs, Corbin, and the proposed class (collectively, "Plaintiffs") as the non-movants. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

GEO is a Florida-based international conglomerate and publicly traded for-profit corporation founded in 2003. ([Filing No. 1-1 at 3](#).) It knowingly and exclusively for financial benefit and profit, operates the largest and only privately-owned state prison in Indiana. *Id*. GEO has collected more than $100 million in benefit and value in its operations concerning the proposed class members (mentally disabled prisoners). *Id*.

Plaintiffs are, or were, inmates in the "Mental Health Unit" at New Castle Correctional Facility ("New Castle"), a prison GEO privately owns and operates in Henry County Indiana. ([Filing No. 1-2 at 4-5](#).) The Mental Health Unit is a maximum-security facility that holds up to 128 mentally disabled and mentally ill prisoners. *Id.* at 9. Inmates in the Mental Health Unit engage in daily labor, performing tasks such as cleaning, completing reports, and assisting non-disabled employees in their work maintaining the Mental Health Unit. *Id.* at 10. GEO pays inmates in the Mental Health Unit approximately $10.00 per month for their services. *Id*.

GEO typically "takes possession of any given class members after they have suffered a serious injury or trauma while held at a prison facility that is publicly owned and operated". ([Filing No. 1-2 at 6](#).) It then recruits and arranges for proposed class members to be held at its privately held facility, ostensibly to "stabilize" the prisoner in a three-month program not to exceed six months. *Id*. at 6. Plaintiffs have been restrained in the Mental Health Unit usually longer than six months and at times for years, and repeatedly prevented from transferring from the unit and ceasing labor for GEO. *Id*. at 7.

The conditions in the Mental Health Unit are poor. GEO isolates inmates in small rooms for approximately twenty hours per day. *Id.* at 11. It retaliates against inmates who suffer injury

or object to the conditions of the Mental Health Unit by extending their time in isolation. *Id.* It promises inmates breaks from their small rooms, but regularly cancels those breaks. *Id.* And it routinely chains and shackles inmates when they are working outside of their rooms. *Id.*

Plaintiffs make five separate claims in their Complaint: (1) GEO violated the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1581, 1589, 1590, and 1595 by subjecting the proposed class to peonage, involuntary servitude, and forced labor; (2) GEO violated Plaintiffs' Fourteenth Amendment right to equal protection of the laws by discriminating against them without a reason rationally related to a legitimate government interest; (3) GEO violated Plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment by subjecting them to cruel and uncivilized conditions of confinement; (4) GEO discriminated against proposed class members due to their mental disabilities in violation of the Rehabilitation Act of 1973 (29 U.S.C. § 794a) and the Americans with Disabilities Act (42 U.S.C. § 12111); and (5) GEO committed false imprisonment, confinement, unjust enrichment, and negligence against the proposed class—torts under Indiana law. *Id.* at 12-14. Plaintiffs ask this Court for preliminary and permanent injunctions transferring the proposed class out of the Mental Health Unit, compensatory and punitive damages, treble damages, and legal costs, attorney fees, and expert witness costs and fees. *Id.* at 14. GEO moves to dismiss, arguing the proposed class's claims are both legally deficient and unsupported by sufficient factual allegations. (Filing No. 5).

## II. LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not the merits of the suit. *Triad Assocs., Inc. v. Chi. Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). The standard for assessing the procedural sufficiency of pleadings is imposed by Federal Rule of Civil Procedure 8(a)(2), which requires "a

short and plain statement of the claim showing that the pleader is entitled to relief." Thus, although the complaint need not recite "detailed factual allegations," it must state enough facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is facially plausible when the plaintiff pleads facts sufficient for the court to infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The *Twombly/Iqbal* standard "is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). By comparison, a complaint that merely contains "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy the factual plausibility standard. *Twombly*, 550 U.S. at 555.

A party seeking dismissal under Rule 12(b)(6)'s requirement that the complaint state a claim upon which relief can be granted bears a heavy burden. In making this determination, the court views the complaint in the light most favorable to the plaintiffs, accepting all well-pleaded factual allegations as true and drawing all reasonable inferences from those allegations in favor of the plaintiffs. *Lee v. City of Chi.*, 330 F.3d 456, 459 (7th Cir. 2003). The plaintiff "receives the benefit of imagination" at this stage "[as] long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). Thus, a complaint should only be dismissed pursuant to Rule 12(b)(6) when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). "To withstand a Rule 12(b)(6) challenge . . . 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together,' and the question the court should ask is '*could* these things have happened, not *did* they happen.'" *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533

(7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010)) (emphasis in original).  Additionally, the Court may not rely upon evidence and facts outside of those alleged in the Complaint in ruling on a motion to dismiss.

## III.  DISCUSSION

As an initial matter, the Court notes that Plaintiffs' have filed a Motion for Leave to Cite Supplemental Authority in Support of Their Response in Opposition to Defendant the GEO Group, Inc.'s 12(B)(6) Motion to Dismiss.  (Filing No. 27.)  GEO does not oppose that motion (Filing No. 29), and it is therefore **granted**.  The supplemental authority, *Menocal v. GEO Group, Inc.*, 882 F.3d 905 (10th Cir. 2018), *cert. denied*, will be considered by the Court.

The Court will address Plaintiffs' claims in the same order and grouping the parties do: (1) claims under the TVPA, (2) constitutional claims, (3) claims under the Americans with Disabilities Act and Rehabilitation Act, and (4) Indiana tort claims.

## A.  Trafficking Victims Protection Act (TPVA), 18 U.S.C. §§ 1581, 1589, 1590, 1595

Plaintiffs bring three claims under the TVPA of 2000 and subsequent reauthorizing acts. They allege that GEO has held them in a condition of peonage, proscribed by 18 U.S.C. § 1581; has obtained their labor services by means of force, threat of force, physical restraint, or threat of physical restraint, proscribed by 18 U.S.C.  § 1589; and has harbored and transported them for labor or services in violation of the TVPA, proscribed by 18 U.S.C.  § 1590.

Title 18 U.S.C. § 1595 creates a civil cause of action for victims of violations of the TVPA against their perpetrators.  It also subjects to civil liability any person who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter."

GEO argues all the TVPA claims fail as a matter of law and are inadequately pled. (Filing No. 6 at 3-10.) GEO characterizes Plaintiffs' TVPA claim as twofold: Plaintiffs argue GEO violated the TVPA by "subjecting Plaintiffs to involuntary servitude—whether framed as peonage [§ 1581] or forced labor [§1589]—and second, that GEO intentionally trafficked Plaintiffs to the New Castle facility for that purpose [§ 1590]." *Id.* at 4. GEO argues that inmates are not subjected to "involuntary servitude" even when they are required to help clean and maintain prison facilities, because those tasks are a "civic duty" performed by detained persons. *See, e.g., Channer v. Hall*, 112 F.3d 214, (5th Cir. 1997); *Bayh v. Sonnenburg*, 573 N.E.2d 398, 412 (Ind. 1991). And Plaintiffs' trafficking claims, GEO argues, are derivative of their forced labor claims because the TVPA prohibits the trafficking of a person into involuntary servitude. *Id.* at 5. Additionally, GEO argues that it was the Indiana Department of Correction ("IDOC"), not GEO, who placed Plaintiffs in the Mental Health Unit at New Castle, and thus GEO cannot be liable under the TVPA for trafficking Plaintiffs.

GEO also argues Plaintiffs "have not adequately pled facts that suffice to make their claims plausible." *Id.* at 8. Citing *Clyatt v. United States*, 197 U.S. 207, 215 (1905), GEO argues to be subject to peonage, the putative peon must owe a debt, and Plaintiffs have not alleged that they owed a debt to GEO or IDOC. *Id.* at 9. Plaintiffs have alleged no coercion other than threats of force or punishment that merely amount to an accurate summation of the adverse consequences the inmates would suffer under Indiana law if they declined to fulfill their work responsibilities. *Id.* at 9-10. GEO asserts that Plaintiffs' allegation underlying its trafficking claim merely regurgitates the exact language of the TVPA. *Id.* at 10.

In response, Plaintiffs reiterate their allegations, which include that they are forced to work for GEO without wages, the purpose of that work is to turn a profit for GEO, and that GEO "obtains

[its] persons and labor by scheme of misrepresentation and deceitfully holding itself out as a facility that would assist Plaintiffs." (Filing No. 9 at 9.) Plaintiffs also allege that "the conditions under which they perform services for [GEO] are harmful and include long periods of segregation and isolation, few breaks, and routine shackling." *Id.* Plaintiffs dismiss the notion that GEO's contract with the state of Indiana immunizes it from liability under the TVPA. *Id.* at 10. According to the Plaintiffs, GEO "presents no new argument in support of the argument that it is entitled to invoke the 'civic duty' exception to press Plaintiffs into service for its own financial profit," and, moreover, that argument "does not go to the adequacy of the Plaintiffs' pleadings but merely its disagreement with them." *Id.* at 10-11. Plaintiffs argue that GEO's reliance on cases like *Channer* and *Sonnenburg* is misplaced because those cases consider claims under the Thirteenth Amendment rather than the TVPA. *Id.* at 10. The Court will address each claim in turn.

1. **Peonage – 18 U.S.C. § 1581**

Under 18 U.S.C. § 1581(a), "[w]hoever holds or returns any person to a condition of peonage, or arrests any person with the intent of placing him in or returning him to a condition of peonage, shall be fined under this title or imprisoned not more than 20 years, or both." Plaintiffs seek damages and attorney's fees and costs under 18 U.S.C. § 1595, which allows "[a]n individual who is a victim of a violation of this chapter [to] bring a civil action against the perpetrator…." Peonage is "compulsory service in payment of a debt." *Bailey v. Alabama*, 219 U.S. 219, 242 (1911). To have committed peonage, the defendant must have "intentionally held a person against his or her will and coerced that person to work in order to satisfy a debt by (1) physical restraint or force, (2) legal coercion, or (3) threats of legal coercion or physical force." *U.S. v. Farrell*, 563 F.3d 364, 372 (8th Cir. 2009); *see also U.S. v. Sabhnani*, 599 F.3d 215, 241 (2d Cir. 2010).

While Plaintiffs' Complaint makes the allegation that GEO forces those housed in the Mental Health Unit to labor in order to "create financial benefit and value for itself," (Filing No. 1-1 at 6), it does not allege that Figgs, Corbin, or any of the proposed class members are forced to work in order to satisfy a debt to GEO. At one point, the Complaint alleges that "[b]oth Mr. Figgs and Mr. Corbin have been subjected to…peonage…." *Id.* at 8. But that mere recitation of the language of 18 U.S.C. § 1581 is insufficient to state a claim for relief. Because Plaintiffs do not allege that they owe a debt to GEO, an essential element of the offense of peonage, their motion to dismiss under 18 U.S.C. § 1581 is **granted**.

## 2. Forced Labor – 18 U.S.C. § 1589

The "forced labor" provision of the TVPA was [e]nacted largely 'to combat' the 'transnational crime' of 'trafficking in persons,'" § 1859 criminalizes the use of forced labor:

> **(a)** Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means--
> > **(1)** by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> > **(2)** by means of serious harm or threats of serious harm to that person or another person;
> > **(3)** by means of the abuse or threatened abuse of law or legal process; or
> > **(4)** by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,
> shall be punished as provided under subsection (d).
>
> **(b)** Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

*Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1178 (9th Cir. 2012) (quoting 22 U.S.C. § 7101(a), (b)(24)). Serious harm under the statute includes "harm, whether physical or nonphysical,

including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(2).

Plaintiffs' arguments rest primarily on the language of the act, but they also cite *Menocal v. GEO Grp., Inc.*, 113 F.Supp.3d 1125 (D. Colo. 2015). In *Menocal*, occupants of a GEO Group-run immigration detention facility, brought a nearly identical claim under § 1589, alleging that "by requiring detainees to clean their 'pods' under threat of solitary confinement, defendant has violated the [TVPA]." *Id.* at 1131-1132. The *Menocal* court rejected the defendant's arguments to follow courts that ruled for defendants on claims brought under 18 U.S.C. § 1584 or the Thirteenth Amendment, both of which the court viewed as narrower in scope than § 1859. Additionally, it rejected defendant's argument that § 1859 contained a "civic duty exception," a doctrine recognized by *Channer* asserting it is lawful to require incarcerated persons to perform chores and maintenance. And even if a civic duty exception could be read into § 1859, the *Menocal* court contended, "defendants have cited no authority for…applying such an exception to a private, for-profit corporation under contract with the government." *Id.* at 1133. Ultimately, the court denied the defendant's motion to dismiss Menocal's TVPA claim. *Id.*

GEO argues that "[t]he *Menocal* court charted an erroneous course by allowing a claim under 18 U.S.C. § 1589 against GEO to survive a motion to dismiss." (Filing No. 11 at 3.) GEO's first attack on *Menocal* is that it subverts the "TVPA's overarching purpose," which is "to ensure just and effective punishment of traffickers, and to protect their victims." *Id.* at 2, 4 (quoting Pub. L. No. 106-386, § 102, 114 Stat. 1488 (2000)). GEO urges this Court to follow the Congressional intent of the TVPA rather than the plain language of § 1589 because Plaintiffs' proposed

construction of § 1589 would lead to an absurd result. *Id.* at 3. Second, GEO asserts the idea that "prisoners and detainees may be lawfully required to perform certain housekeeping chores for purposes of institutional maintenance" is "well-established," and that Congress "ratif[ied] the exception recognized in *Channer*" by "pass[ing] later enactments affecting the TVPA." *Id.* at 4-5. It does not specify what these enactments are.

GEO's invitation to follow the intent, rather than the plain language, of § 1589 is unpersuasive. The TVPA criminalizes obtaining labor through threat of force or restraint, and Plaintiffs allege that inmates at the Mental Health Unit "are routinely chained and shackled when working" and "long hours of isolation may be extended for weeks when a class member object to the conditions of the [Mental Health Unit] or suffers injury due to the harmful conditions of the environment." (Filing No. 1-1 at 8.) That language clearly alleges a scheme whereby Plaintiffs are required by force and physical restraint to work and are threatened with serious harm—long hours of solitary confinement—if they refuse to work.

As for the civic duty exception established in *Channer*, it specifically applied only to the federal government and the court expressly limited its holding to Thirteenth Amendment cases. *Channer* at 219 ("We hold that the federal government is entitled to require a communal contribution by an [Immigration and Naturalization Service] detainee in the form of housekeeping tasks, and that Channer's kitchen service, for which he was paid, did not violate the Thirteenth Amendment's prohibition of involuntary servitude."). GEO has not cited a case in which a court applied the civic duty exception to a private entity, even one that was contracting with the government. The civic duty exception was conceived of as a recognition that the government occasionally requires citizens to perform public tasks like jury duty or military service that benefit the country at large. *Channer* at 218. But there is no indication that GEO's alleged coercive labor

benefits anyone other than GEO, a private corporation.  As another federal court astutely observed, "even where the private entity has contracted with the federal government…[a]ny cost savings accruing to the private entity ultimately may not reach the government.  Such an attenuated scheme does not clearly fall under the civic duty exception…."  *Novoa v. GEO Grp. Inc.*, 2018 WL 3343494 at *13 (C.D. Cal. June 21, 2018).  The Court agrees with that assessment.

Because the facts as stated by the Plaintiffs are taken as true for purposes of a motion to dismiss, the Court must accept that they are forced to work for GEO without wages (or miniscule wages of $10.00 per month), the purpose of that work is to turn a profit for GEO, and that GEO "obtains [its] persons and labor by scheme of misrepresentation and deceitfully holding itself out as a facility that would assist Plaintiffs." (Filing No. 9 at 9.)  The Court must also accept that "the conditions under which they perform services for [GEO] are harmful and include long periods of segregation and isolation, few breaks, and routine shackling."  *Id*.  Although the Court can determine as a matter of law whether the Plaintiffs have alleged sufficient facts that would give rise to a statutory duty on the part of the Defendants, whether that statute has been violated is a question for the trier of fact. GEO's motion to dismiss Plaintiffs' forced labor claim under 18 U.S.C. § 1589 is therefore **denied**.

### 3. Trafficking – 18 U.S.C. § 1590

The Plaintiffs' third claim under the TVPA alleges trafficking.  Under 18 U.S.C. § 1590, "[w]hoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years."  The Complaint alleges that "Defendant recruits, harbors, and restrains class members in the [Mental Health Unit] of New Castle Correctional Facility in order subject (sic) them to servitude and create financial benefit and value for itself." (Filing No. 1-1 at 6.)

GEO makes two arguments in support of its Motion to Dismiss. First, it argues that this claim is derivative of Plaintiffs' other two TVPA claims, and thus should be dismissed along with them. However, that argument is unavailing because the Court denied GEO's motion to dismiss Plaintiffs' § 1589 claim.

GEO also argues that it cannot be liable for trafficking because IDOC, not GEO, determines where inmates are placed. "Indiana law makes it abundantly clear that IDOC—not GEO—evaluates, classifies, assigns, and transfers inmates, including Plaintiffs and all putative class members. GEO, by contrast, merely provides facilities and services to IDOC for inmates committed to IDOC's custody." (Filing No. 6 at 6.) But § 1590 does not merely criminalize recruiting or transporting a person for labor services that violate the TVPA, it also criminalizes anyone who "harbors" or "obtains by any means" a person victimized under the act.

The Complaint alleges that "Defendant recruits, transports, harbors, and restrains members in the [Mental Health Unit]…in order to subject them to servitude." (Filing No. 1-1 at 6.) GEO asks the Court to dismiss the Complaint because that "language merely regurgitates the exact language found in Section 1590, making it the sort of '[t]hreadbare recital[]' of a cause of action that is entitled to no presumption of truth." (Filing No. 6 at 10 (citing *Iqbal*, 556 U.S. at 678)). This argument ignores the many other allegations contained in Plaintiffs' Complaint that GEO at least "harbors" persons who are forced to labor against their will. The Complaint alleges Figgs, Corbin, and the proposed class members are "held in peonage" by GEO (Filing No. 1-1 at 2), that they are "confined" by GEO (*id.*), that GEO "imprisons Plaintiffs" (*id.* at 3), and that GEO "holds" and "takes possession of" the inmates in the Mental Health Unit. *Id.* at 6. The Complaint's regurgitation of the language of § 1590 does not negate its other allegations, which posit a comprehensive scheme whereby GEO holds prisoners under the guise of providing them with

services for their mental illness, and then forces them to work under threat of force or punishment, in violation of the TVPA. As noted earlier, at this stage of the proceedings, the Court must accept Plaintiffs' allegations as true. It is not necessary at this stage that Plaintiffs' prove their factual assertions; the Court is only looking at the sufficiency of the Complaint. The Complaint sufficiently states a claim under § 1590. GEO's Motion to Dismiss this claim is **denied**.

**B.**     <u>**Eighth and Fourteenth Amendments**</u>

Plaintiffs bring claims under the Eighth and Fourteenth Amendments to the U.S. Constitution. They allege GEO "subjected named Plaintiffs and putative class members to cruel and uncivilized conditions of confinement in violation of the Eighth Amendment to the U.S. Constitution." ([Filing No. 1-1 at 9-10](Filing No. 1-1 at 9-10).) They also allege GEO "discriminated against named Plaintiffs and putative class members without a reason rationally related to a legitimate government interest and so violated their fundamental rights by denying them the equal protection of laws under the Fourteenth Amendment to the U.S. Constitution." (*Id.* at 9.)

**1.**     <u>**Eighth Amendment**</u>

The Eighth Amendment's prohibition of cruel and unusual punishments obligates prison officials to "take reasonable measures to guarantee the safety of…inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The basic concept underlying the Eighth Amendment is nothing less than the dignity of man." *Brown v. Plata*, 131 S. Ct. 1910, 1928 (2011) (citations omitted); *see Estelle*, 429 U.S. at 102 (concluding that the Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . against which we must evaluate penal measures" (citations omitted)). "To establish an Eighth Amendment violation, an inmate must show that a defendant was deliberately indifferent to 'an excessive risk to inmate health or safety[.]'" *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018) (quoting *Gevas v. McLaughlin*, 798

F.3d 475, 480 (7th Cir. 2015) (brackets original)). "This includes two components: (1) 'the harm to which the prisoner was exposed must be an objectively serious one'; and (2) judged subjectively, the prison official 'must have actual, and not merely constructive, knowledge of the risk.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). "For this second element, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

GEO contends the Complaint fails both elements of a successful Eighth Amendment challenge—it does not allege a "sufficiently serious" deprivation as a matter of law and it fails to sufficiently plead that GEO acted culpably. (Filing No. 6 at 12, 13.) GEO argues Plaintiffs' allegations—that they are locked in their cells for twenty hours per day and are shackled when they are outside their cells—are less serious than other conditions the Seventh Circuit has deemed to be insufficiently serious for an Eighth Amendment violation. It also argues "Plaintiffs have alleged no connection between GEO's staffing decision and their health and safety," and thus the Complaint fails the second prong.

The Court agrees that even if Plaintiffs could establish that the harm they allege is "sufficiently serious" under *Farmer* to create a potential Eighth Amendment violation, their Complaint fails to allege that GEO acted with "deliberate indifference to inmate health or safety" as required by *Farmer* for an Eighth Amendment violation. *Farmer* at 834. Plaintiffs allege that GEO subjects them to harsh conditions like "long hours of isolation" (Filing No. 1-1 at 8) but do not specify what harm they suffer from those conditions or whether GEO is indifferent to or even aware of that harm. Plaintiffs contend that the conditions of labor and confinement of class members are harmful to class members but do not say how the conditions are harmful. The Complaint does not specify any facts indicating Plaintiffs are at increased risk of physical injury,

violence from other inmates at the Mental Health Unit, or exacerbated mental illness or disability due to the harsh conditions.  Nor do they allege that GEO is aware of or deliberately indifferent to their health and safety.  Because Plaintiffs failed to plead an essential element of their Eighth Amendment claim, their motion to dismiss the Eighth Amendment claim is **granted**.

## 2.    **Fourteenth Amendment**

Plaintiffs' allege that GEO discriminated against Figgs, Corbin, and the proposed class based on their mental disabilities in violation of the Equal Protection Clause of the Fourteenth Amendment. Figgs suffers from antisocial personality disorder and serious depression. ([Filing No. 1-1 at 2](#).)  Corbin suffers from post-traumatic stress disorder, antisocial personality disorder, and serious depression.  *Id*.  The Complaint describes Plaintiffs as "mentally disabled," but does not go into any more detail than that.  It merely alleges that GEO discriminates against Plaintiffs because of their mental disability.

The Fourteenth Amendment states:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; **nor deny to any person within its jurisdiction the equal protection of the laws**.

U.S. Const. amend. XIV, § 1 (emphasis added).  It is the last, bolded portion that Plaintiffs invoke.  In an Equal Protection Clause challenge that does not involve a fundamental right or a suspect class, the court applies rational-basis review.  *Ind. Petroleum Marketers and Convenience Store Ass'n v. Cook*, 808 F.3d 318, 322 (7th Cir. 2015) (citing *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).

Under rational-basis review, a statute or government policy is constitutional if there is a "reasonably conceivable state of facts that could provide a rational basis" for the statute or policy.  *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1072 (7th Cir. 2013).  A policy reviewed under

a rational-basis framework bears "a strong presumption of validity," and the challenger must "negate every conceivable basis that might support it." *FCC* at 314-15. Plaintiffs' Complaint specifically alludes to rational-basis review, and both parties agree that rational-basis review applies. ([Filing No. 1-1 at 9](#) ("Defendant acting under color of discriminated (sic) against named Plaintiffs and putative class members without a reason rationally related to a legitimate government interest….")).

Like GEO, the Court has difficulty deriving from the Complaint the discriminatory behavior Plaintiffs are leveling. A section of the Complaint titled "FORCED LABOR & DISCRIMINATION AT THE MHU"[1] explains the work Plaintiffs are expected to do—"cleaning, completing reports, carrying out obligations of Defendant's contracts, and assisting non-disabled employees in various aspects of their work maintaining the MHU. ([Filing No. 1-1 at 7](#).) That section explains that Plaintiffs "are only paid approximately $10 a month," and that they "are not free to cease performance of their labor for Defendant or leave the jobsite." But the section does not explain how this treatment differs from the way GEO treats inmates who are not housed in the Mental Health Unit. The Court is uncertain whether Plaintiffs consider the tasks they are assigned to be discriminatory, or whether they think the pay they receive for working or the punishment they receive for not working differs from inmates who are not mentally disabled. The Complaint does not give GEO fair notice of the grounds upon which Plaintiffs' Fourteenth Amendment claim rests, their motion to dismiss is therefore **granted**. *See Twombly*, 550 U.S. at 555.

C.     <u>Rehabilitation Act, 29 U.S.C. § 794a and Americans with Disabilities Act, 42 U.S.C. § 12111</u>

Plaintiffs bring claims under the Rehabilitation Act, 29 U.S.C. § 794a, and the Americans with Disabilities Act, 42 U.S.C. § 12111. They allege that

---

[1] The parties' briefing often abbreviates "Mental Health Unit" to "MHU."

> Defendant as a recipient of federal financial assistance subjected named Plaintiffs and putative class members to discrimination on the basis of their mental disabilities by denying them reasonable accommodations and access to the benefits and services afforded to individuals without disabilities in violation of Section 504 of the Rehabilitation Act of 1973.

([Filing No. 1-1 at 10](#)).  Plaintiffs further allege that "Defendants subjected named Plaintiffs and putative class members to discrimination in the terms and conditions of employment as compared to employees without mental disabilities in violation of Title I of the Americans with Disabilities Act." *Id.*

GEO moves to dismiss both claims, arguing they fail as a matter of law.  GEO argues the Americans with Disabilities Act claim fails because Plaintiffs are not GEO's "employees" under the Americans with Disabilities Act.  ([Filing No. 6 at 16](#).)  And it argues the Rehabilitation Act claim fails because GEO does not receive "federal financial assistance" as defined by the Rehabilitation Act.  (*Id.* at 19.)

The Court need not reach either of those questions because Plaintiffs' Americans with Disabilities Act and Restoration Act claims are not adequately pled.  Both claims rest on allegations of discrimination based on a mental handicap, but, as with Plaintiffs' Fourteenth Amendment claim, the Complaint does not provide facts that give GEO fair notice of the discrimination it allegedly engages in.  For the same reasons the Court outlined in Section III.B.2 of this Order, Plaintiffs' claims under the Americans with Disabilities Act and the Rehabilitation Act fail *Twombly's* pleading standard, and thus their motion to dismiss is **granted**.

**D.**     **State Tort Claims for False Imprisonment, Confinement, Unjust Enrichment, and Negligence**

The Complaint alleges state tort claims for false imprisonment, confinement, unjust enrichment, and negligence against GEO –

Defendants knowingly and intentionally subjected named Plaintiffs and putative class members to state torts and wrongs by confining them without their consent and without legitimate authorization, obtained the value of their labor in detriment to and at the expense of these laborers, and had a duty to them to prevent their exploitation and abuse but failed to do so.

([Filing No. 1-1 at 10-11](#)).

1. **False Imprisonment**

In Indiana, the tort of false imprisonment is defined as "the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent." *Bentz v. City of Kendallville*, 577 F.3d 776, 779 (7th Cir. 2009) (internal quotation omitted). GEO argues for dismissal of Plaintiffs' false imprisonment claim "for the indisputable reason that [Plaintiffs] are properly imprisoned." ([Filing No. 6 at 21](#).) Plaintiffs respond that "Defendant may still unlawfully imprison an individual, just as any officer of the law may." ([Filing No. 9 at 24](#).)

Recognition that a private, for-profit entity may unlawfully imprison an individual is not enough to support the allegation that this specific defendant, a private, for-profit entity did falsely imprison the Plaintiffs. The Complaint does not present any facts that would indicate GEO's imprisonment of Plaintiffs is unlawful, such as an assertion that some or all of the Plaintiffs were arrested absent probable cause. Private organizations can lawfully confine "committed persons" in Indiana under Indiana Code § 11-8-3-1. Although a private person or company can commit false imprisonment, the facts relayed by the Complaint do not indicate that Plaintiffs were falsely imprisoned or falsely arrested, only that, once housed in the Mental Health Unit, they are exploited for their labor and forced to live and work in unsuitable conditions.

The Plaintiffs have not adequately pled a claim of false imprisonment because no facts in the Complaint support the claim. Thus, the motion to dismiss the false imprisonment claim is **granted**.

## 2.    **Confinement**

In Indiana, "[a] person who knowingly or intentionally confines another person without the other person's consent commits criminal confinement[,]" a Level 6 felony.  Ind. Code § 35-42-3-3.  If a "person…suffers pecuniary loss as a result of a violation of…IC 35-42-3-3…the person may bring a civil action against the person who caused the loss."  Ind. Code § 34-24-3-1.  Plaintiffs seek recovery through this civil application of the statute.

GEO moves to dismiss Plaintiffs' confinement claim, arguing "Plaintiffs identify no case in which a state prisoner has successfully brought a claim for criminal confinement against the private operator of a facility housing state inmates." ([Filing No. 11 at 10.](Filing No. 11 at 10)) It argues that Plaintiffs proper remedy for any claim of confinement is "to seek habeas relief against IDOC." *Id.* And, GEO argues, "if a contractor lawfully carrying out its contract with IDOC would become civilly or criminally liable within the scope of this statute by carrying out such contractual obligations with the State, then it is void as unconstitutionally vague." *Id.* at 11.

Charges of criminal confinement in Indiana frequently accompany charges of kidnapping, rape, or assault. *See*, *e.g.*, *Creek v. State*, 588 N.E.2d 1319 (Ind. Ct. App. 1992) (kidnapping); *Holderfield v. State*, 578 N.E.2d 661 (Ind. 1991) (rape); *Lavoie v. State*, 903 N.E.2d 135 (Ind. Ct. App. 2009) (felony battery). That pattern carries over into the two cases the Court found in which a plaintiff attempted to obtain a civil recovery for confinement under Ind. Code § 34-24-3-1. *Doe v. Vigo Cnty., Ind.*, 2017 WL 4122836 (S.D. Ind. September 18, 2017) (plaintiff who was held against her will and raped by a Vigo County Parks Department employee sued the county for both sexual battery and criminal confinement); *Sheehy v. Brady's This Is It*, 2013 WL 3319684 (N.D. Ind. July 1, 2013) (plaintiff brought a suit against her former employer for both criminal confinement and assault). Plaintiffs have not identified, and the Court has not found, any cases in

which an inmate brought suit under Ind. Code § 34-24-3-1 alleging criminal confinement against the operator of the prison in which he was incarcerated.

Importantly, in their Complaint, Plaintiffs admit that they are prisoners who have been convicted in Indiana and are serving prison sentences under the custody of IDOC. GEO contends, and the Court agrees, that if Plaintiffs view their confinement in New Castle as unlawful, their avenue for relief is a federal habeas petition, not a civil confinement suit. It is unlikely that the State of Indiana views GEO's conduct as criminal confinement because under state law private organizations who contract with the government are explicitly authorized to engage in "the custody, care, confinement, or treatment of committed persons…." Ind. Code § 11-8-3-1. For that reason, Plaintiffs' confinement claim fails as a matter of law and the motion to dismiss is **granted**.

### 3. Unjust Enrichment

"A claim for unjust enrichment 'is a legal fiction invented by the common law courts in order to permit a recovery…where the circumstances are such that under the law of natural and immutable justice there should be a recovery….'" *Zoeller v. E. Chi Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009) (quoting *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991)). "To prevail on a claim of unjust enrichment, a claimant must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Id.*

GEO urges the Court to dismiss Plaintiffs' claim for unjust enrichment because Indiana law, specifically Ind. Code § 11-10-6-3(a), (b)(1), "authorizes prisons to require cleaning and maintenance work from inmates." (Filing No. 6 at 22.) GEO also argues that to state a claim for unjust enrichment Plaintiffs must allege that they had an expectation to be paid for their labor, and their Complaint makes no such allegation. *Id.*

The Complaint alleges and reiterates multiple times that Plaintiffs are not adequately compensated for their work and that "Defendant could not profitably operate the MHU at New Castle Correctional Facility" without their labor. (Filing No. 1-1 at 7.) Plaintiffs allege that because of their labor GEO received a measurable benefit—a profitable prison and more than $100 million in benefit and value in its operations—and that a failure to compensate them would be unjust. Those are the two elements of an unjust enrichment claim, and thus Plaintiffs' claim is adequately pled and does not fail as a matter of law. GEO's motion to dismiss Plaintiffs' unjust enrichment claim is **denied**.

### 4. <u>Negligence</u>

The elements of negligence in Indiana are (1) a duty owed by the defendant, (2) a breach of that duty, (3) a compensable injury to the plaintiff, and (4) causation. *Ryan v. TCI Architect/Eng'rs/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017). GEO moves to dismiss Plaintiffs' negligence claim "because they have alleged none of these elements." (Filing No. 6 at 23.) The Plaintiffs allege that GEO "had a duty to them to prevent their exploitation and abuse but failed to do so and so caused harm to them." (Filing No. 1-1 at 11.) But that assertion merely collects the elements of negligence and strings them together. The Complaint does not give detailed facts supporting a claim of negligence nor does it put GEO on notice of the conduct it committed that allegedly constitutes negligence. Because it is not adequately pled, Plaintiffs' motion to dismiss the negligence claim is **granted**.

### IV. <u>CONCLUSION</u>

A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). For the foregoing reasons, GEO's Motion to Dismiss for

Failure to State a Claim ([Filing No. 5](#)) is **GRANTED in part and DENIED in part**. In addition, Plaintiffs' Motion for Leave to Cite Supplemental Authority in Support of Their Response in Opposition to Defendant the GEO Group, Inc.'s 12(B)(6) Motion to Dismiss ([Filing No. 27](#)) is **GRANTED**. The Motion to Dismiss is **GRANTED** as to Plaintiffs' claims for peonage under the TVPA, equal protection under the Fourteenth Amendment, cruel and unusual punishment under the Eighth Amendment, discrimination under the Americans with Disabilities Act and the Rehabilitation Act, false imprisonment, confinement, and negligence. Those claims are **DISMISSED**. GEO's Motion to Dismiss is **DENIED** as to Plaintiffs' claims for forced labor and trafficking under the TVPA, and state law claim of unjust enrichment. These claims have survived the initial hurdle of a motion to dismiss. Whether or not these claims will survive summary judgment is a matter for another day.

       **SO ORDERED.**

      Date: 3/29/2019

_Tanya Walton Pratt_

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Christopher Carson Myers
CHRISTOPHER C. MYERS & ASSOCIATES
cmyers@myers-law.com

David W. Frank
CHRISTOPHER C. MYERS & ASSOCIATES
dfrank@myers-law.com

Adam Garth Forrest
BOSTON BEVER KLINGE CROSS & CHIDESTER
aforrest@bbkcc.com

Charles Deacon
NORTON ROSE FULBRIGHT US LLP
charlie.deacon@nortonrosefulbright.com

Mark Thomas Emery
NORTON ROSE FULBRIGHT US LLP
mark.emery@nortonrosefulbright.com